Richardson, J.,
delivered tbe opinion of tbe court:
This is an action under tbe Abandoned or Captured Property Act, 2Iareli 12,1863 (12 Stat. L., 820)', to recover the net proceeds of two hundred and twenty-five bales of cotton owned by tbe claimant’s intestate in Texas, and alleged to have been seized by agents of tbe Treasury Department in tbe year 1865, sold, and tbe proceeds paid into tbe Treasury of tbe United States.
It appears by tbe findings that Micajab Johnson, tbe claimant’s intestate, was tbe owner of two hundred and twenty-five bales of cotton at Sabine Pass, in tbe State of Texas, in June, 1865; that thirty of them were shipped to New Orleans, where twenty-eight of tbe same were seized by a Treasury agent, forwarded to New York, sold, and tbe net proceeds, amounting to $2,698.94, paid into tbe Treasury. For this amount tbe claimant is entitled to judgment.
Tbe remaining one hundred and ninety-five bales are found to have been seized at Sabine Pass by a Treasury agent, sent to Houston, Tex., and there received into tbe custody and control of another agent of tbe Treasury Department stationed at that place, and there tbe findings leave them as having, been no further traced either directly or indirectly.
In order to warrant a judgment for a claimant under tbe captured and abandoned property act, according to repeated *278 decisions of this court and of tbe Supreme Court, it must appear that the property, the proceeds of which are sued for, belonged to the-claimant; that it was seized, sold, and the net proceeds paid into the Treasury. The proof of these material and ultimate facts is not required to be direct, tracing each article by marks and brands up to the time of its sale, and thereafter the receipt of the very money for which it was sold, distinct and separate from all other money, and its deposit in the defendant’s Treasury; but, in like manner as any other actions at law are tried in courts of justice, may be made up of such other facts and circumstances as lead the minds of this court to infer the same as the final conclusions which a jury would be justified in deducing therefrom, or which in certain cases the court would hold to result as a presumption of law. (Silvey’s Case, 4 C. Cl. R., 490, 7 id., 278; Henry’s Case, 6 id., 389; Spencer’s Case, 8 id., 288, 11 id., 181, 461; Crussells Case, 7 id., 277, 14 Wall., 1; Cones’s Case, 8 id., 329; Ross’s Case, 10 id., 424, 11 id., 343, 12 id., 565; Raymond’s Case, 11 id., 502; Pugh’s Case, 99 U. S., 205).
The learned counsel for the claimant, in his earnest argument, insists that, as the claimant’s property has been traced into the custody and control of an agent of the Treasury Department, whose duty it was either to sell it himself and turn the proceeds into the Treasury, or so to dispose of the same, through the orders of his superior officers, as that the net proceeds should reach the government depository of public money, the court should hold that the defendants are liable therefor, and that the claimant is eutitled to judgment in this action, on the ground that it is to be presumed that public officers do the duties which the law requires of them.
In language too general and unrestricted to be accepted without explanation, as accurately enunciating a principle of law, it has been sometimes said by judges, in their judicial opinions, that public officers áre presumed to have performed their duty, as though there were such a presumption which might be generally invoked and relied upon.
It is quite true that an act which a public officer is required to perform may be inferred from subsequent facts, when it forms a link in the chain of evidence consistent with those facts, or upon which subsequent acts depend for their validity. As was said by Mr. Justice Story, in the case of Bank, of the United States v. Dandridge et al. (12 Wheat., 64): “ Thus it (the law) will presume that a man acting in a public office has been *279 rightly appointed; that entries found in public books have been made by the proper officer; that upon proof of title, matters collateral to that title shall be deemed to have been done,” &c. So in the case of Butler v. Allnutt (1 Stark., 222), frequently cited, where, under an order in council of Great Britain, the time of the clearance of vessels with certaiu specific articles on board was required to be indorsed at the custom-house on the license, and an action arose as to the legality of the voyage of a certain vessel, it was held that the indorsement on the license, which was lost, might be inferred from the proof of entry of the goods, which the customs officers would not otherwise have permitted. Van Ormand v. Dowich (1 Camp., 44,) is a similar case. (See also United States v. Jones, 19 Wall., 598, and 1 Greenl. on Ev., § 40).
These cases are sufficient to show that prior official acts may be inferred from subsequent acts and facts which are proved, and that is as far as the presumption that public officers perform their duty is correctly recognized. It is not a presumption of law or of fact that such officers have executed all their duties in relation to any matter in controversy, arising from proof of prior circumstances, which placed them in position of obligation and ability to perform the same, without evidence of some subsequent facts which must have, or at least might have, resulted therefrom.
But if the rule in other cases were as broad as contended for by the claimant’s counsel, the well-known course of events in relation to the capture, seizure, and disposition of property supposed to belong to public enemies in States in rebellion, amidst the confusion, disregard of private rights, arbitrary and lawless conduct of camp-followers and others, incident to a state of war, so well authenticated as to have become familiar history, and so frequently brought to the attention of this court in the hundreds of cases which have been tried here under the provisions of the captured and abandoned property act that they cannot be disregarded or overlooked, show that such a rule of presumption could not apply to the officers of the government into whose hands such property fell within the insurgent States during the rebellion, and that it was scarcely possible for them, under the circumstances, to have protected and preserved all such property.
The judgment of the court is that the claimant recover the sum of $2,698.94.