Weldon, J.,
delivered the opinion of the court:
At the annual letting of contracts, by the Postmaster-General, for the transportation of «the mails of the United States in the year 1878, which took place about the 15th of March, the claimant was the successful bidder on route No. 46118, from Salinas City, in the State of California, to Gabilan, in said State, and back, for the period of four years, commencing on the 1st day of July, 1878, at an annual compensation of $796. On the 13th of April, 1878, the said letting was fully consummated in a contract, the material provisions of which are set forth in the findings of the court.
*156 At the time the contract was made there was in existence an agreement between the parties on the same route, and for the same service, which had been in force from 1870, and which provided for the performance of the service in the same terms that the contract in suit provides for the service in controversy in this case. The claimant alleges that, relying upon the mode of performance of the old contract as recognized by both parties, he was induced to enter into the arrangement of the 13th of April for four years’ service from the 1st day of J uly, 1878.
The contract provides “for transporting the mail on route No. 46118, from Salinas, Cal., by SantaRita, Natividad, to Gab-ilan and back, six times a week, at $796.” The distance from Salinas to Gabilan, by the way of Santa Rita and Natividad, is 12 miles, while the distance from Gabilan to Salinas by the most direct route is 10 miles; and in returning from Gabilan to Salinas the contractor took the most direct route, to wit, a straight line, making the distance 2 miles less than by the curved line through Santa Rita and Natividad.
That mode of transportation obtained under the first contract continued through its existence, and was carried by the act of party into the execution of the contract of the 13th of April, 1878. During the time of the existence and performance of the contract in suit other contracts for other services existed between the parties, and upon those other contracts small balances were claimed by the petition $ but these claims were abandoned on the trial and do not now form a part of the litigation, and such other contracts have no connection with the case except as hereafter indicated.
For the alleged failure of the claimant to carry the mails via Santa Rita and Natividad, from July 1,1878, to March 31,1882, the Postmaster-General, on May 13,1882, entered a deduction from his compensation of $746.25, which deduction equals one-quarter of the total compensation fixed by the contract for the whole service during the period covered by the alleged delinquency. A part of said deduction was made from money due the claimant for services under other contracts, there not being sufficient due under contract No. 46118 to cover the amount of the delinquency alleged by the Postmaster-General for the failure to perform the contract as it was construed by the Department.
The deduction made on May 13, 1882, included what was *157 due the claimant for the two quarters ending July 1, 1882, and $348.25 due him for other services. This suit is brought to recover the deduction thus made, amounting to the sum óf $746.25, and involves the question whether, in the exercise of his power under the contract, the Postmaster-General had a right to determine a failure for the alleged delinquency and retain the compensation otherwise due the claimant for the services performed by him under the different agreements.
The question whether the proper construction of the agreement required the claimant to return from Gabilan via Nativi-dad and Santa Rita, was discussed very ably by counsel on both sides, and in the absence of a finding of fact, as to the act of the parties, antecedent to the malting of the agreement, and during its execution from the 1st of July, 1878, to some time in May, 1882, it would be necessary for the court to pass upon that question. In the abstract, we would be inclined to a construction different from the one indicated by the result in this case, but, as we determine the law, the contract has been construed by the claimant and the responsible power of the defendants, and that construction became and was the contract at the time the services were performed covered by. the period of deductions.
It was the duty of the postmasters connected with the mail route at the termini to report to the Department the manner in which the service was performed, and the presumption is that they performed their duty and that the Department was advised, not only during the time of the performance of the contract in controversy, but the antecedent contracts, covering the same service embraced in contract No. 46118.
It was said by this court in the Ford Case (18 C. Cls. R., 75), “From all the surrounding circumstances we think we are justified in applying to this officer the rule that an officer who is required to perform a duty is presumed to have performed it.” (Crussell Case, 1 Wall., 1; 7 C. Cls. R., 276, as modified and explained by this court in Johnson’s Case, 14 C. Cls. R., 276.)
The findings show, that on October 23,1878, the Acting Second Assistant Postmaster-General certified to the Auditor of the Treasury for the Post-Office Department, that for the quarter ending September 30, 1878, there had been no failure or delinquency'in the execution of the contract upon the part of the contractor. It is safe to assume that for all preceding pay- *158 meats the same certificate was made, based upon reports furnished by the postmasters connected with route No. 16118.
“ From returns received,” as used in the certificate of the Postmaster-General, it is apparent that the Department acted on the faith of reports received from time to time from the postmasters; and it must be presumed that such officers performed their duty and reported facts as they existed in relation to the performance of the service. It is not necessary to determine to what extent the act and acquiescence of the postmasters at the termini conclude or bind the United. States; the responsible officers of the Department being in possession of the same information and knowledge, their acts commit the defendant to the construction of the agreement as placed upon it by the parties, who performed the labor of its execution, and who are cognizant of the mode in which it was performed.
“ Evidence of a former transaction between the same parties has been held admissible to explain the meaning of terms in a written contract respecting subsequent transactions of the same character.” (1 Greenleaf, § 293).
The habit of dealing with the subject-matter of a contract, is admissible in determining the intent of the parties, and in measuring the liability imposed by the terms of an agreement.
“ Parol evidence of usage is generally admissible to enable the court to arrive at the real meaning of the parties, who are naturally presumed to have contracted, in conformity to the known and established usage.” (Bleven v. Screw Company, 23 Howard, 120.)
In matters of contract, the same liability ordinarily attaches to the Government that pertains to individuals, unless by the force of a statute the law is changed. (Cape Ann Granite Company v. United States, 20 C. Cls. R., 11; 7 Wall., 666; 7 C. Cls. R., 65.)
The view taken by the court as to the rights of the claimant, is no invasion of the powers expressly reserved to the Postmaster-General by the terms of the contract, but is simply a denial o’f the right of that officer to determine by mere construction the rights of the claimant. Having once adopted an interpretation of an agreement, and induced the making and performance of the contractupon that interpretation, the Postmaster-General will not be permitted to change such construction, and thereby work forfeitures and inflict penalties against and upon contracting parties.
*159 The contract was performed as the parties understood it; and it is too late for one of them to take exceptions to such performance at the end of the transaction.
It is the judgment of the court that the claimant recover the sum of $746.25.